**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUDI BARRECA and JENNIFER HARRELL, on behalf of themselves and all others similarly situated, | Case No.:  1:23-cv-7972 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC; and DOES 1 through 10, | |
| Defendants. | |

Plaintiffs Judi Barreca and Jennifer Harrell ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Does 1 through 10 ("GSK" or "Defendant"), based on GSK's false and deceptive advertising and labeling of Abreva cold sore medication. Plaintiffs make the following allegations based on the investigation of their counsel, and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge.

## INTRODUCTION

1.      During the statute of limitations period, GSK has marketed and sold its Abreva Cold Sore Treatment Creams ("Abreva") to consumers throughout the State of New York as the "*Only* FDA Approved Medicine to Shorten Healing Time" for cold sores.

2.      This representation sends a clear, specific message to consumers: if consumers want FDA-Approved medicine to shorten healing time for cold sores, their *only* choice is Abreva.

3.      Thus, Abreva intentionally conflates the word "Medicine" with its brand name. This is false and misleading to consumers because many other brands on the market contain the *same ingredient*–docosanol cream (10%)–approved by the U.S. Food & Drug Administration (the "FDA") to shorten healing for cold sores, as found in Abreva.

4.      Had Plaintiffs and other consumers known the truth, they would not have purchased Abreva, or they would have paid less for Abreva. Thus, Plaintiffs and other consumers have suffered economic injury as a result of GSK's false and deceptive claim.

5.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated consumers who purchased Abreva during the statute of limitations period, for violations

of New York General Business Law §§ 349 & 350, breach of express warranty, fraud, and unjust enrichment.

6.    Plaintiffs, on behalf of themselves and a Class of similarly situated consumers (defined *infra* at paragraph 35), are seeking damages, penalties, restitution, declaratory relief, and all other remedies the Court deems appropriate.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class Members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and GSK is a citizen of a state different from at least some members of the proposed Class.

8.    This Court has personal jurisdiction over GSK because GSK has sufficient minimum contacts in New York, or otherwise intentionally avails itself of the markets within New York, through its marketing, distribution, and sale of Abreva in New York.

9.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Barreca's claims occurred in this District. Plaintiff Barreca resides in this District, and she purchased Abreva in this District, during the statute of limitations period.

## PARTIES

10.    Plaintiff Barreca is a citizen of the United States and the State of New York. In or around September 2022, Plaintiff Barreca purchased Abreva cream at Walgreens in Brooklyn, New York. In making this purchase, Plaintiff Barreca saw and relied on the statement "*Only* FDA Approved Medicine to Shorten Healing Time," which was prominently printed on the principal display panel of the product. Based on this statement, Plaintiff Barreca believed that, if she wanted

2

FDA-Approved medicine to shorten healing time, Abreva was her only option. This belief was an important factor in her purchasing decision. Plaintiff Barreca did not see an asterisk on the Product's packaging, or any disclosures regarding the fact that other Abreva contains the only FDA-approved medicine to shorten healing times for cold sores, either before or after her purchase of the Product. Plaintiff Barreca would have paid less for Abreva, or would not have purchased it at all, had she known the truth—*i.e.*, that there are several, cheaper alternatives in the market that contain the same ingredient approved by the FDA to shorten healing time for cold sores as is found in Abreva. Therefore, Plaintiff Barreca suffered injury in fact and lost money as a result of GSK's misleading, false, unfair, and deceptive practices, as alleged herein.

11.     Plaintiff Harrell is a citizen of the United States and the State of New York. In or around September 2022, Plaintiff Harrell purchased the Abreva cream in tube form at CVS in Clifton Park, New York. In making this purchase, Plaintiff Harrell saw and relied on the statement "*Only* FDA Approved Medicine to Shorten Healing Time", which was prominently printed on the principal display panel of the product. Based on this representation, Plaintiff Harrell believed that, if she wanted FDA-Approved medicine to shorten healing time, Abreva was her only option. This belief was an important factor in her purchasing decision. Plaintiff Harrell did not see an asterisk on the Product's packaging, or any disclosures regarding the fact that Abreva contains the only FDA-approved medicine to shorten healing times for cold sores, either before or after her purchase of the Product. Plaintiff Harrell would have paid less for Abreva, or would not have purchased it at all, had she known the truth—i.e., that there are several, cheaper alternatives in the market that contain the same ingredient approved by the FDA to shorten healing time for cold sores as is found in Abreva. Therefore, Plaintiff Harrell suffered injury in fact and lost money as a result of GSK's misleading, false, unfair, and deceptive practices, as alleged herein.

12.     GSK is a multinational pharmaceutical and biotechnology company. GSK is incorporated in Delaware and maintains its principal place of business in New Jersey. Abreva is one of GSK's products; it is pervasively sold across the State of New York and the United States.

13.     The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such Doe defendants under fictitious names. Upon information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiffs' and Class Members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

**A.     The Class Products.**

14.     GSK prominently makes the following representation on the principal display panel of Abreva: "_Only_ FDA Approved Medicine to Shorten Healing Time*" (hereinafter, "the _FDA Approved_ claim").

15.     The products at issue in this case are the: (1) Abreva Cold Sore Treatment Cream; and (2) Abreva Cold Sore Treatment Cream Spray (hereinafter, "Abreva" or "the Products").

16.     Representative images of Abreva's packaging are depicted below:





17.     Based on information and belief, the *current* iteration of the Products' packaging displays an asterisk next to the "*Only* FDA Approved Medicine to Shorten Healing Time." There is also an asterisk on the Products' back label which states "*ABREVA contains the only OTC medicine approved by the FDA to shorten healing time and duration of symptoms." Plaintiffs are

unaware of when this asterisk and back label language were introduced on the Products, but do not recall ever seeing any asterisk or the back label language on the Products' packaging. The purported disclaimer on the current Products' packaging, which is inconspicuously presented in the same font and color as the remainder of the Products' back label, is depicted below:



18.    Even assuming the asterisk and purported disclaimer were presented on the Products' packaging, a reasonable consumer would not notice them, given, inter alia, their size and placement, in context, and relative to the other prominent representations and claims made on the packaging.

**B.    The *FDA Approved* Claim is False and Deceptive.**

19.    Through its *FDA Approved* claim, GSK conflates the word "Medicine" with its brand name, thereby intentionally propagating the misconception that if consumers want FDA-Approved medicine to shorten healing time for cold sores, their *only* choice is Abreva.

20.    Over two decades ago, the FDA approved the use of the ingredient docosanol 10% cream as a treatment for cold sores under the brand name Abreva.[1] At the time, Abreva was the sole brand manufacturing docosanol 10% cream. However, Abreva is no longer the only brand on the market that contains docosanol 10% cream. Docosanol 10% cream remains the only ingredient approved by the FDA to shorten healing time for cold sores, however, there are numerous over-the-counter brands that contain docosanol 10% cream, including Equate (manufactured and sold by Walmart),[2] other private label brands manufactured and sold by Walgreens,[3] Target,[4] and numerous other brands.[5] [6]

---

[1]    https://www.accessdata.fda.gov/drugsatfda_docs/nda/2000/020941s000_Approv.pdf

[2]    https://www.walmart.com/ip/Equate-Cold-Sore-and-Fever-Blister-Treatment-Docosanol-10-Cream-0-07oz/140372559

[3]    https://www.walgreens.com/store/c/walgreens-docosanol-cold-sore-cream,-10/ID=prod6386564-product

[4]    https://www.target.com/p/docosanol-10-cream-cold-sore-fever-blister-treatment-tube-0-07oz-2pk-up-38-up-8482/-/A-79661921?ref=tgt_adv_XS000000&AFID=google_pla_df_free_online&CPNG=Health&adgroup=94-3

[5]    https://medipond.com/docosanol-10Pct25-topical-cream.html

[6]    https://theonlinedrugstore.com/premier-value-docosonal-cream-10-07-oz/

21.     Therefore, Abreva is *not* the only choice for consumers who are seeking FDA-Approved medicine to shorten healing time for cold sores. Thus, the false and misleading message that Abreva is the "*Only* FDA Approved Medicine to Shorten Healing Time" deceives reasonable consumers.

**C.     The NAD Has Found Similar Representations to Be Deceptive.**

22.     The National Advertising Division ("NAD") is "the advertising industry's robust self-regulatory body, which offers a vigorous (yet voluntary) dispute resolution process for advertisers and is charged with independently monitoring and reviewing national advertising for truthfulness and accuracy."[7]

23.     Multinational corporations submit disputes to the NAD, which in turn evaluates the truth and accuracy of consumer advertising, and renders a decision that is either followed or appealed by the parties.

24.     The NAD recently reviewed a dispute brought by Johnson & Johnson Consumer, Inc. against Sanofi Consumer Healthcare regarding its over-the-counter heartburn products, Pepcid and Zantac 360, respectively.[8]

25.     In the dispute, Johnson & Johnson argued that Sanofi's claim on its Zantac 360 labels, which stated that that the product "contains the #1 doctor recommended **medicine** approved to both prevent and relieve heartburn," reasonably conveyed the misleading message "that **Zantac 360** is the #1 doctor recommended product or brand to prevent and relieve heartburn."[9] The NAD agreed with Johnson & Johnson's argument.

---

[7]     https://www.americanbar.org/groups/intellectual_property_law/publications/landslide/2018-19/march-april/navigating-national-advertising-division/

[8]     https://bbbprograms.org/media-center/dd/sanofi-zantac-360.

[9]     *Id* (emphasis added).

26.     "In so finding, [the] NAD disagreed with [Sanofi]'s contention that the challenged advertising clearly refers to Zantac's active ingredient."[10] Rather, the "NAD determined that in the absence of anything grammatically or syntactically tying '#1 doctor recommended' to the ingredient famotidine or otherwise qualifying the claim, one message reasonably conveyed by the [advertisements] is that Zantac 360 is the #1 doctor recommended product for heartburn."[11]

27.     Applying this reasoning to the Abreva Products, consumers understand the word "Medicine" in the "_Only_ FDA Approved Medicine to Shorten Healing Time" claim to refer to Abreva. Just as the NAD has found in an analogous context, consumers would not interpret Abreva's "_Only_ FDA Approved Medicine to Shorten Healing Time" claim to refer solely to the fact that Abreva _contains_ the active ingredient, docosanol 10% cream, approved by the FDA to shorten healing time for cold sores.

28.     In other words, the NAD also takes the position that the use of the word "medicine," without a clear statement that the term refers to the product's ingredient, is reasonably understood by consumers to describe the _advertised product_.

29.     This common-sense notion is particularly apt because Abreva dominates the market. Much like Google dominates the search engine market, Abreva dominates the niche market for cold sore products. For example, in 2019, Abreva accounted for 71.1% of all sales in the over-the-counter cold sore medication market.[12] Thus, in context, consumers are even more

---

[10]     _Id._

[11]     _Id._

[12]     https://www.statista.com/statistics/195306/share-of-us-lip-balm-sales-in-2010-and-2011-by-brand/

likely to associate the *FDA Approved* claim with the well-known brand name Abreva, as opposed to the obscure active ingredient docosanol 10% cream.[13]

**D.    The *FDA Approved* Claim Harms Reasonable Consumers.**

30.    The *FDA Approved* claim is material to reasonable consumers—i.e., it impacts their purchasing decisions—because it relates to the perceived efficacy of the Class Products. The sole purpose of Abreva is to treat cold sores and consumers value express representations of approval by government agencies.

31.    As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of Abreva, GSK knew that the *FDA Approved* claim is false and deceptive. GSK also knew or should have known that Plaintiffs and other consumers would rely on its *FDA Approved* claim in purchasing Abreva, and would therefore reasonably believe that only Abreva contains medication approved by the FDA to shorten healing time for cold sores.

32.    Plaintiffs and Class Members purchased Abreva relying on *FDA Approved* claim. They did not know, nor did they have reason to know, that there are other readily available and cheaper cold sore treatment products on the market that contain the FDA-approved active ingredient to shorten healing time for cold sores.

33.    Moreover, Plaintiffs and other consumers would have paid less for Abreva, or would not have purchased Abreva at all, had they known that Abreva is not the only brand which contains medication approved by the FDA to shorten healing time for cold sores.

34.    Therefore, consumers are being misled and financially injured.

---

[13]    "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d. Cir. 2013).

## **CLASS ACTION ALLEGATIONS**

35.    Plaintiffs bring this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of Members of the following Class:

> All persons who purchased one or more of the Class Products in New York within the applicable statute of limitations.

36.    Excluded from the Class are the following individuals and/or entities: GSK and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which GSK has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

37.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class after having had an opportunity to conduct discovery.

38.    Both Plaintiffs are members of the proposed Class.

39.    **Numerosity:** The proposed Class is so numerous that joinder of all members would be impractical. The number of individuals who purchased Abreva throughout the State of New York during the relevant time period is at least in the thousands. Accordingly, Class Members are so numerous that their individual joinder herein is impractical. While the precise number of Class Members and their identities are unknown to Plaintiffs at this time, these Class Members are identifiable and ascertainable.

40.    **Common Questions Predominate:** There are questions of law and fact common to the proposed Class that will drive the resolution of this action and will predominate over questions affecting only individual Class Members. These questions include, but are not limited to, the following:

a.  Whether GSK misrepresented material facts in connection with the packaging, marketing, distribution, and sale of the Abreva;

b.  Whether the *FDA Approved* claim is false and deceptive;

c.  Whether GSK engaged in unfair, unlawful and/or fraudulent business practices;

d.  Whether GSK's unlawful conduct, as alleged herein, was intentional and knowing;

e.  Whether Plaintiffs and the Class are entitled to damages, and if so, in what amount; and

f.  Whether Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

41.    GSK has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs on behalf of the proposed Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by Members of the proposed Class flow, in each instance, from a common nucleus of operative fact, namely, GSK's deceptive packaging and advertising of Abreva. Each instance of harm suffered by Plaintiffs and Class Members has directly resulted from a single course of unlawful conduct. The entire Class has been uniformly exposed to the same deceptive practice, as each of the Class Products' containers bear the *FDA Approved* claim. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

42.    **Superiority:** Because of the relatively small damages at issue for each individual Class Member, no Class Member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

43.    **Typicality:** The representative Plaintiffs' claims are typical of those of the proposed Class, as all members of the proposed Class are similarly affected by GSK's uniform unlawful conduct as alleged herein.

44.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the proposed Class as their interests do not conflict with the interests of the Members of the proposed Class they seek to represent, and they have retained counsel competent and experienced in similar class action litigation. The interests of the members of the Class will be fairly and adequately protected by the Plaintiffs and their counsel.

45.    GSK has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Class, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the Members of the Class.

## CAUSES OF ACTION

### COUNT I

**Violation of N.Y. Gen. Bus. Law § 349**
(*For the Class Against All Defendants*)

46.    Plaintiffs repeat the allegations contained in paragraphs 1-45 above as if fully set forth herein.

47.    Plaintiffs bring this claim individually and on behalf of the members of the Class against GSK.

48.    New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . ." GBL § 349(a).

49.    The practice alleged herein—namely, labeling and advertising Abreva with the *FDA Approved* representation—is unfair, deceptive, false, and misleading, in violation of GBL § 349.

50.     GSK's conduct is unfair, deceptive, false, and misleading because it conveys the message to consumers that if they want to purchase a cold sore medication that has been blessed by the FDA, their only option is Abreva, when in reality, many brands contain the active ingredient approved by the FDA to shorten healing time.

51.     The foregoing deceptive acts and practices were directed at Plaintiffs and members of the Class. At all relevant times, GSK has known that there are many other products on the market that contain docosanol 10% cream, and that Plaintiffs and other members of the Class would reasonably and justifiably rely on the *FDA Approved* claim prominently printed on the containers when purchasing the Class Products. Nonetheless, GSK deceptively advertises Abreva in this manner in order to deceive consumers into believing they are buying a superior and/or safer product compared to other products available on the marketplace.

52.     GSK's *FDA Approved* claim regarding Abreva is material to a reasonable consumer because it relates to the perceived quality and efficacy of Abreva, which in turn leads to a price premium due to the *FDA Approved* claim. A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchase decisions.

53.     Plaintiffs and members of the Class have suffered and continue to suffer injuries caused by GSK because they would have paid significantly less for Abreva, or would not have purchased it at all, had they known that they could have purchased many other cheaper products that also contain ingredients approved by the FDA to shorten healing time for cold sores— docosanol 10% cream.

54.     As a result of GSK's unlawful actions, Plaintiffs and members of the Class seek to enjoin GSK's deceptive and unlawful acts and practices described herein, to recover actual damages, fifty dollars (or both), whichever is greater, as well as treble damages, reasonable

attorneys' fees, and all other remedies this Court deems proper.

## COUNT II

### Violation of N.Y. Gen. Bus. Law § 350
### (*For the Class Against All Defendants*)

55.     Plaintiffs repeat the allegations contained in paragraphs 1-45 above as if fully set forth herein.

56.     Plaintiffs bring this claim individually and on behalf of the members of the Class against GSK.

57.     GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

58.     In turn, GBL § 350-a defines false advertising as:

"[a]dvertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

59.     GSK's actions are untrue and misleading in representing that Abreva is the only option for consumers who want FDA-Approved treatments for cold sores.

60.     The foregoing misleading acts and practices were directed at Plaintiffs and members of the Class.

61.     GSK's *FDA Approved* claim regarding Abreva is material to a reasonable consumer because it relates to the quality and efficacy of Abreva. A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchase decisions.

62.     The foregoing misrepresentation has resulted in consumer injury or harm to the New York public.

16

63.     Plaintiffs and members of the Class have been injured as a direct and proximate result of GSK's violations described above, as they would have paid significantly less for Abreva, or would not have purchased it at all, had they known that that the *FDA Approved* claim was deceptive.

64.     As a result of GSK's unlawful action, Plaintiffs and members of the Class seek to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**COUNT III**

**Breach of New York Express Warranty**
**N.Y. U.C.C. § 2-313**
**(*For the Class Against All Defendants*)**

65.     Plaintiffs repeat the allegations contained in paragraphs 1-45 above as if fully set forth herein.

66.     Plaintiffs bring this claim individually and on behalf of the members of the Class against GSK.

67.     New York U.C.C. § 2-313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313.

68.     GSK has expressly warranted on Abreva's packaging containers that it is the "*Only* FDA Approved Medicine to Shorten Healing Time." Despite this warranty, other brands contain the only FDA approved medicine to shorten healing time for cold sores: docosanol cream (10%).

69.    Specifically, the *FDA Approved* claim (a) is an affirmation of fact or promise made by GSK to consumers that Abreva is the only medication approved by the FDA to shorten healing time for cold sores; (b) became part of the basis of the bargain to purchase Abreva when Plaintiffs relied on the representation, and (c) created an express warranty that Abreva would conform to this affirmation of fact or promise. In the alternative, the representation about Abreva is a description of goods that were made as part of the basis of the bargain to purchase Abreva, and which created an express warranty that Abreva would conform to the Class Products' descriptions.

70.    GSK's misrepresentation regarding Abreva is material to a reasonable consumer because it relates to the quality and efficacy of Abreva. A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchasing decisions.

71.    Plaintiffs and members of the Class reasonably and justifiably relied on the foregoing express warranty, believing that Abreva did in fact conform to this warranty.

72.    GSK has breached the express warranties made to Plaintiffs and members of the Class.

73.    Plaintiffs and members of the Class paid a premium price for Abreva but did not obtain the full value of Abreva as represented. If Plaintiffs and members of the Class had known of the true nature of the *FDA Approved* claim, they would not have purchased Abreva, or would not have been willing to pay the premium price stemming from the false and deceptive *FDA Approved* claim.

74.    As a result, Plaintiffs and members of the Class suffered injury and deserve to recover all damages afforded under the law.

75.    In or around September 2022, Plaintiffs discovered the foregoing breach. On October 12, 2022, Plaintiffs sent GSK notice of this breach via certified mail. GSK received this

notice on or about October 17, 2022. As of yet, Defendant has not cured any of the issues outlined in this Complaint.

## COUNT IV

**Common Law Fraud**
**(For the Class Against All Defendants)**

76.    Plaintiffs repeat the allegations contained in paragraphs 1-45 above as if fully set forth herein.

77.    Plaintiffs bring this claim individually and on behalf of the members of the Class against GSK.

78.    GSK has willfully, falsely, or knowingly packaged and marketed Abreva in a manner indicating that if consumers want to purchase FDA-Approved medication to shorten healing time for cold sores, their only option is Abreva. However, this is untrue because, at all relevant times, there have been numerous products in the over-the-counter cold sore market that contain docosanol 10% cream, the FDA-Approved medicine to shorten healing time for cold sores. Therefore, GSK has misrepresented a material fact as it relates to Abreva.

79.    GSK's misrepresentation and/or omission is and was material (i.e., the type of misrepresentation to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions) because it relates to the quality, safety, and efficacy of Abreva.

80.    GSK knew or at minimum recklessly disregarded the fact that there are numerous other products on the market that contain the only active ingredient approved by the FDA to shorten healing time for cold sores, and that the *FDA Approved* claim would deceive consumers into believing otherwise.

81.    GSK intends for Plaintiffs and other consumers to rely on these representations and

omissions, as evidenced by GSK's intentionally representing that Abreva is the "**Only** FDA Approved Medicine to Shorten Healing Time." GSK is not required to print the *FDA Approved* claim on Abreva's packaging. It is a voluntary claim that GSK makes in order to induce sales and charge more for Abreva.

82.     Plaintiffs and members of the Class have reasonably and justifiably relied on GSK's misrepresentation and/or omission when purchasing Abreva, and had the correct facts been known, would not have purchased Abreva, or would not have purchased Abreva at the prices at which it was offered.

83.     Therefore, as a direct and proximate result of GSK's fraud, Plaintiffs and members of the Class have suffered economic losses and other general and specific damages, including but not limited to, the amount (or portion of the amount) paid for Abreva, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT VI

### Quasi Contract/Unjust Enrichment/Restitution
### (For the Class Against All Defendants)

84.     Plaintiffs repeat the allegations contained in paragraphs 1-45 above as if fully set forth herein.

85.     Plaintiffs bring this claim individually and on behalf of the members of the Class against GSK.

86.     As alleged herein, GSK has intentionally and recklessly made misleading representations to Plaintiffs and members of the Class to induce them to purchase Abreva. Plaintiffs and members of the Class have reasonably relied on the misleading representation and have not received all of the benefits promised by GSK. Plaintiffs and members of the Class therefore have been induced by GSK's misleading and false representations about Abreva, and

paid for it when they would and/or should not have or paid more money to GSK for Abreva than they otherwise would and/or should have paid.

87.    Plaintiffs and members of the Class have conferred a benefit upon GSK, as GSK has retained monies paid to them by Plaintiffs and members of the Class.

88.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Class—i.e., Plaintiffs and members of the Class did not receive the full value of the benefit conferred upon GSK.

89.    Therefore, it is inequitable and unjust for GSK to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs and the members of the Class back for the difference of the full value of the benefits compared to the value actually received.

90.    As a direct and proximate result of GSK's unjust enrichment, Plaintiffs and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by GSK from its deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, respectfully pray for the following relief:

A.    Certification of this case as a class action on behalf of the Class defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.    A declaration that GSK's actions, as described herein, violate the claims described herein;

C.    An award to Plaintiffs and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust

enrichment that GSK obtained from Plaintiffs and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

D.      An award of all economic, monetary, actual, consequential, compensatory, statutory, and treble damages caused by GSK's conduct;

E.      An award of punitive damages;

F.      An award of nominal damages;

G.      An award to Plaintiffs and their counsel of reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Class of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Class, hereby demand a jury trial with respect to all issues triable of right by jury.

DATED: October, 26 2023

**GLANCY PRONGAY & MURRAY LLP**

By: /s/ *Daniella Quitt*
    Daniella Quitt
    745 Fifth Avenue, 5th FL
    New York, NY 10151
    Telephone: (212) 935-7400
    Email: dquitt@glancylaw.com

**TREEHOUSE LAW LLP**

By: /s/ *Joshua Nassir*
    Joshua Nassir (*pro hac vice* forthcoming)
    2121 Avenue of the Stars, Suite 2580
    Los Angeles, CA 90067
    Telephone: (310) 751-5948
    Email: jnassir@treehouselaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (pro hac vice forthcoming)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

*Attorneys for Plaintiffs and the Putative
Class*